## THE MARIEL.

### GRIFFIN and others *v.* THE MARIEL and others.

*(District Court, N. D. Illinois.   July 5, 1887.)*

COLLISION—TUG AND TOW—IMPRUDENT INCREASE OF SPEED.
   A steam-tug with two tows, one behind the other, entered the south branch of the Chicago river abreast of a steam-barge, going in the same direction at the rate of about four miles an hour.  Within half a mile the tug so increased her speed that the stern of her rear tow came abreast of the wheel of the barge, which maintained her speed of four miles.  The suction of the wheel caused the tow to sheer, so that she came into collision with a passing steamer. *Held,* that the tug was responsible for the collision, having, by increasing her speed so as to bring her tow abreast of the barge's wheel at a time when another steamer was passing, caused a dangerous situation, which she was able and ought to have anticipated.

*Wm. H. Condon,* for libelant.
*Schuyler & Kremer,* for the Mariel.
*Wm. L. Mitchell,* for the Butters.

BLODGETT, J.   This is a libel by the owner of the canal-boat Iceland against the steam-tug Mariel, the steam-barge Butters, the tug Welcome, and the canal-boat Messenger, for damages to the Iceland occasioned by a collision between the Iceland and Messenger, near Stilson's slip in the Chicago river, about a half mile below where the Illinois & Michigan canal joins the South branch of the river.

There is less conflicting and contradictory testimony than is usual in collision cases; and it appears without dispute that on the evening of June 24, 1886, the Mariel entered the South branch of the Chicago river, from the Illinois & Michigan canal, with the canal-boat Servia and the canal-boat Iceland in tow; the Servia being towed by a line of about 175 feet astern of the Mariel, and the Iceland by a line of about the same length, or perhaps longer, astern of the Servia.   Just as the Mariel entered the river, the steam-barge Butters came down the river from the stock-yards, so that the tug and the barge were about abreast of each other when the Mariel drew into the river.   Some of the witnesses say they were just abreast, and others say the barge was 40 or 50 feet ahead of the Mariel.   Signals were exchanged between the tug and barge, by which it was agreed that the barge should keep upon the starboard or east side of the river.   All of the testimony concurs in showing that the Butters was proceeding at the rate of about four or four and a half miles per hour, and that the Mariel, after having entered the river, increased her speed to such an extent that when they reached a point opposite Stilson's slip, which is not to exceed a half mile from the junction of the canal with the river, the Mariel and the Servia had gone clear past the Butters, and the stern of the Iceland was abreast of the Butters' wheel. When the stern of the Iceland came abreast, or nearly so, of the Butters' wheel, the suction of the wheel drew the stern to the starboard towards

the Butters, and caused the bow of the Iceland to sheer to port, so that she was brought in collision with the canal-boat Messenger, which was proceeding up the river in tow of the tug Welcome, causing the injury complained of.

All the testimony seems to agree that the sheer of the Iceland was caused by her stern being drawn towards the Butters by the action of the Butters' wheel, and that she became unmanageable by her crew in consequence of this sheer; and the only question, it seems to me, in the case, is, who was blamable for the predicament into which the Iceland was thrown? The Welcome was proceeding up the South branch on the west side; and there was ample room for her and her tow, the Messenger, to pass clear of the Mariel and her tows, and the Butters; the Butters being upon the east or starboard side of the river as she was going down, and lying pretty close to the shore, so as to give the Mariel and her tows ample room to pass her. There is no evidence in the case that the Welcome was running too fast, or was in an improper place on the river, or that there was any bad seamanship in her own management, or that of her tow the Messenger. She was proceeding in her own place, at a proper rate of speed, and handling her tow in the usual manner that tugs handle canal-boats upon the waters of the Chicago river. There is no proof that the Butters increased her speed from the time the Mariel came abreast of her, nor that her speed was unusual or unsafe, but she seems to have proceeded at the same rate of speed at which she was proceeding before she reached the mouth of the canal; and it seems to me there can be no doubt but what the injury to the Iceland was occasioned solely by the act of the Mariel in attempting to tow the Iceland so closely alongside of the Butters. I do not think that the Butters was obliged to stop her wheel, or slow up, so long as she was not proceeding, any part of the time, at an unusual or dangerous rate of speed. The increase of speed was solely on the part of the Mariel, which increased, of course, the speed of her tows, and perhaps rendered the Iceland more susceptible to the suction of the Butters' wheel; and the Mariel seems to me solely responsible for having brought the Iceland into dangerous proximity with the Butters. All the evidence concurs that the Welcome was coming up the river in plain sight, with her tow, the Messenger, giving the usual signals, upon the west side, or near the west bank of the river. Those in charge of the Mariel must have been able to see the Welcome approaching, and must have been able to calculate that, at the speed they were running, they would bring the Iceland abreast of the Butters at about the time the Iceland would be abreast of the Welcome or the Messenger; and hence the danger of the Iceland being caused to sheer, or lose her steerage, by the motion of the Butters' wheel, ought to have been anticipated by those in command of the Mariel. Seemingly, with entire disregard of the danger of attempting, in the narrow channel of the Chicago river, at the point where this collision occurred, to effect a safe passage for a tow along-side of the working wheel of a propeller, 9 feet in diameter, the master and pilot took their tow into the peril, and it seems to me that his negligence, and his alone, is responsible for the

consequences. There will be a finding, therefore, that the injury to the Iceland was caused by the fault or negligence of those in command of the Mariel, and that the damages should be paid by the Mariel.

The libelant in this case seems to have proceeded upon the assumption that he would make everybody that was in the vicinity of this collision parties respondent, whether he had any proof of their negligence or fault or not; and inasmuch as the proof has wholly failed of making the Welcome or the Messenger in any degree blameworthy, the libel must be dismissed, at the cost of libelant, as against the Welcome, Messenger, and Butters, and a decree entered in favor of the libelant against the Mariel alone for the damages and costs, and a reference to the commissioner to take proof in regard to the damages.